and Bank of Santander. Thank you. Thank you. Thank you very much. Hello. You can come on up here. Does it make sense to lower the, lower it back a little? See if you can lower it just a little bit. That's great. Before you start, how would you prefer that I address you? Would you prefer to be called June Le Gall or would you prefer to be called Ju Jeon? It's my late father's name. Le Gall is my ex-spouse's name. So normally I'm called Madame Le Gall. So you can call me June Le Gall. Okay. Great. Well, you've reserved one minute and you've been able to sit here and watch to see how this works. Thank you. So with that, you can go ahead and begin your argument. Can I start now? Yes. Okay. Thank you. Good morning, Your Honor. My name is June Le Gall. I'm the plaintiff, the appellant, personally litigating this case. Thank you for granting me the opportunity to present my appeal today. I ask for your patience with my English and I will respectfully seek clarification if needed. Well, this case concerns financial fraud, organized misconduct, and the evasion of accountability by both individual defendant and the defendant's banks. Despite the overwhelming evidence of their collusion, the trial court failed to address the defendant's liability, resulting in an erroneous and unjust decision. This appeal demonstrated that the bank are not innocent bystanders but integrate participants in their misconduct, benefiting from fraudulent action orchestrated by individual defendants and the people behind them. So in the next 10 minutes, I will be extremely brave, addressing four key points. First, flaws in the trial court's decision. Second, significant procedure errors. Third, new evidence supporting the appeal. The fourth, legal principles supporting defendant's liability. Well, let's look at the first part, flaws in the trial court's decision. The first is mispresentation of responsibility. The trial court improperly shifts all the blame onto the plaintiff, it's me, and disregarding the bank's accountability as a financial institution that benefits from fraud conduct. The absence of individual defendant doesn't exonerate the bank. Rather, it reinforces their complicity as the bank allows this individual to act under their name, facilitating fraud and benefiting from it. Second, overemphasize on service deficiency. The trial court unduly penalized the plaintiff for the challenging in serving individual defendant. The eviction by this defendant, including one falsely claiming to be decreased three years ago, demonstrated their intent to avoid justice, not my failing. So let's look at the second part, the procedure error by the trial court. The trial court committed a significant procedure error that undermined the fairness of the trial. I submitted substantial evidence demonstrating both the individual and the bank's involvement in misconduct, the trial, including binding contract, identification document, their personal information, photo of the family with the children, Christmas photo in their vacation, correspondence, communication, and the financial records. For example, defendant Dave Grayson admitted to my ex-counselor, my ex-counselor, that more than $600,000 payment from me transferred related to the issue. Second, he also admitted in front of my ex-counselor that there's a proof, all the proof are here, that the Bank of America failed to deliver the phone to me, as did the Santata Bank, which is essential to my case. Santata Bank's internal attorney proposed a settlement once upon receiving my complaint. There's even a case management conference scheduled. And also, to receive this fund, myself, I have gone through the affidavit service by Singapore Authority and the French Authority. All the evidence are here. I still have the account to receive this fund. This lawyer probably never know that, because all the evidence never, never was considered in the court recently. Shockingly, none of this material I provided appear in the trial court archive, nor in the appendix. And there's no explanation was offered for the exclusion of my evidence. Did I ever raise a question during the trial court period? I did. I even had a fight with my ex-counselor, because I say, where are them? I'm a very straightforward person. I tell what I thought, and I'm always telling what I think. So, there's a lack of cross-examination. I was denied the opportunity to cross-examine the defendant, which prevented me from fully substantiating my claim and the challenges there are serving. This constitutes a clear, significant procedural error and a denial of fundamental fairness. So, if we don't have the procedural justice, how can we have juridical fairness? So, since appearing, now look at the past three new evidence. Since findings appear by myself, new evidence has emerged that directly ties the bank to the final action of the individual defendant and underscore the need to remain the case. Those confessions are voluntary confessions by individual defendants. As I finally realized how vicious they are, I never initiated any conversation with them, never addressed any mail to them since year 22. And this year, defendant Dave Grayson admitted to misconduct and provide detail of a bank's involvement in fraud. He was saying another defendant was kidnapped by bank's executive. And they had 18 million found intended for me, ready to deliver to me now. Second, the defendant, Frederick, initially claimed to be declared, but he confessed to being part of a scam operation. Others, they wrote to me by themselves. And very often, it is just after my motion, when I send a motion, in one hour or two hours later, I see they react immediately by themselves. And I didn't want to reply to them either. This operation includes fraudulent activity involving senator and the false statement made by the motion I sent. So I don't know if you're getting close to finishing reading, and I know you've reserved another minute. If you want to wrap up this portion of your presentation. This confession was made voluntarily without coercion and held significant property value and a legal standard. So now let's look at the evidence tying the bank to misconduct. The evidence, including financial record correspondence excluded from the tricot, nude materials, and the voluntary confession proves the bank's direct involvement and the complicity in organized criminal activity carried out by the bank agent and the representative, also some high-profile bankers. Okay. Thank you. We'll have you back up during your, you've reserved a minute to come back and talk. I would like to, well, if allowed, just let me make a conclusion. If I'm not given the time to give details, legal doctrine, which holding individual and bank accountable, if I don't have time to say that, I will come to my conclusion if I'm allowed. So I'll fly over to here. It's not easy for me. Your Honor, this case is not just about my personal grievance, but also safeguarding public trust on legal and the financial system. If bank can avoid accountability for such blatant misconduct, the consequence extends far beyond this courtroom. Such a victim can include any members of the society, our children, our siblings, our friends. Not everyone in my position would insist on pursuing justice, especially when faced with significant obstacles and procedural challenges. But me, I have a very rigorous nature. And I firmly believe the importance of addressing wrongdoing and restoring fairness. The message is no organization, no one is above the law. And the court remain probably the last line steadfast in protecting public against exploitation, fraud, greedy, vicious, and procedural injustice. Thank you. Thank you as well. Okay, we'll hear from you when you come back for your minute of rebuttal. I don't know, Mr. Messon? Yes, Your Honor.  Good morning, Your Honors. Sean Messon of McGuire Woods for defendant at Pelley Bank of America. I'm happy to answer any questions the panel may have. Otherwise, the bank is prepared to stand on its papers. I was going to say, can you tell us if any of the three individuals that appellate names work for your client? No, Your Honor. None of those individuals work for the bank. One of the things I'm kicking around in my mind is sort of procedurally, typically we have an allegation on information and belief. Herb was an employee of Bank of America, right? We have that allegation. Typically, we don't look behind that at the motion to dismiss stage. We do it at the summary judgment stage. What's different about this case that would allow us to conclude that that's not a plausible allegation even at the dismissal stage? Your Honor, actually Mr. Herb was a former employee. He is deceased years ago prior to the events that happened with Ms. LaGalle. So the answer to my colleague's question is actually sort of yes? Sort of yes.  But he's deceased. There is no currently any Mr. Herb. There is no record of an employee. And when you say currently, you mean during the time period when this scam operation was taking place? Yes, Your Honor. Okay. Other than that, there is no relation to the bank to any of the fraudsters that scammed Ms. LaGalle. And how do we get to that at the dismissal stage rather than as a summary judgment matter? Well, Your Honor, the claims she made were simply just not facially plausible. As you know, under the Iqbal and Tomley standards, she failed to plead any factual content that would allow the court to draw a reasonable inference that the defendant was liable for the misconduct alleged. She alleges that she was supposed to receive an $80 million loan unsecured from Bank of America in Santander. There are no such things as an $80 million unsecured loan from Bank of America or other banks. It's just simply not possible. It's just simply not doesn't happen. Also, it's just simply implausible that she would have to only show that she had $300,000 through a letter of credit while she was supposed to be making $345,000 payments on this loan. I think $300,000 is like .37% of $80 million. It's just simply an incredible story. It's unfortunate that Ms. LaGalle was scammed by these bad actors that she was unfortunately not able to serve. But the bank just had nothing to do with this at all. Thank you. Mr. Kabbalah. Good afternoon, Your Honors. May it please the court. Richard Kabbalah, calling indictment. Attorneys for appellee Santander Bank. Dismissal here was warranted pursuant to Federal Rules Civil Procedure 12B6 for every count in appellant's amended complaint because she did not plausibly allege that Santander Bank had knowledge of, let alone involvement in, the scheme perpetrated by individuals posing as employees of Bank of America and Santander Bank. Appellant was never a customer of Santander. In her amended complaint, appellant cites to an email address, customer service at santanderusbank.com. That is not a legitimate Santander email address or domain. I'm sorry. Can I ask you to talk about your motion to strike? Can you please clarify, as to Exhibit A, did you want us to strike the citations you listed out or are there broader text and arguments in the brief that you would have us strike along with the citations? You're referring to my motion to strike parts of the brief? Is that what you're referring to? Mm-hmm. It was more than just the citations, Your Honor. It was any type of reference to materials that were outside the record. I tried to list it as cleanly as possible for the panel. I presume maybe I did not, and that's a percipial question. But it's not just the citations. It's anything that was outside the record, not part of the record below, that appellant cited to in her brief as well as supplements that she made in her appendix that we're seeking this court to not consider and to thus strike. We can assume that the appellant was duped by fraudsters, but there's no way that Santander could have been aware of this extraneous fraud. The fraudsters, as I stated in my brief, are using names of former executives of Santander Holdings USA and Banco Santander SA. And I refer the panel to page 8 of my appellant's brief footnote 2. This is an unfortunate incident of a victim who was scammed. My client feels sympathy for fraud victims too, but financial institutions cannot be responsible for something like this outside of their purview. Banks certainly cannot monitor other people, in this case fraudsters, using names of their employees. And I'll rest on my brief unless any of the justices have any questions. Thank you. Thank you, Your Honors. You have one more minute to make some final closing remarks. Thank you. I have two questions for the two banks. Why you two are together? Why it is not Santander Bank with another bank? Why it is not Bank of America with Citibank? This is the first question. Second, do you know before me who is the beneficiary of this loan? Do you know that? His name. What's the problem he had? Then how this fund transferred to me? There is all the evidence. So I said many times you can argue with me, but the more you argue with me, the more we see the procedural injustice, the significant procedural error. Do you know that? There is nothing for like travel light. I brought very few. Ms. LeGault, you should address your arguments to the court here if you can. Thank you. Sorry. So my question is who is the beneficiary of this $18 million loan just before me? It was me who recommended this person to the Santander Bank. And how come finally this stuff has been transferred to me? My second question is during which time, after which event, Bank of America joined the Santander Bank for this $18 million loan? So I know we're running out of time, but let me just ask for a response. I think what I understand the banks to be saying is that there was no $18 million loan. This was very sophisticated scam artists who used their name. And the question in this case is what basis you have besides the say-so of the scam artists to say that it was the banks. Do you have a short answer to that question? Yes. Okay. That would be great. Because the real scammer, the person who really organized, who is called Afed San Abedo, the ex-Santander Bank's chairman, who fled away Europe to the U.S. for banking. Okay. Thank you. Thank you very much. Appreciate it. Appreciate both your arguments. We'll take this case under advisement.